UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: SABINE OIL & GAS CORPORATION, et al., | |
| Debtors. | |
| HPIP GONZALES HOLDING, LLC, | 16 Civ. 4127 (JSR) |
| Appellant, | 16 Civ. 4132 (JSR) |
| v. | |
| SABINE OIL & GAS CORPORATION, et al.[1] | |
| Appellees. | |
| NORDHEIM EAGLE FORD GATHERING, LLC, | 16 Civ. 4615 (JSR) |
| Appellant, | 16 Civ. 4616 (JSR) |
| v. | |
| SABINE OIL & GAS CORPORATION, et al. | |
| Appellees. | |

## REPLY BRIEF OF APPELLANT
## <u>NORDHEIM EAGLE FORD GATHERING, LLC</u>

---

[1] The debtors in these chapter 11 cases include: Sabine Oil & Gas Corporation; Giant Gas Gathering LLC; Sabine Bear Paw Basin LLC; Sabine East Texas Basin LLC; Sabine Mid-Continent Gathering LLC; Sabine Mid-Continent LLC; Sabine Oil & Gas Finance Corporation; Sabine South Texas Gathering LLC; Sabine South Texas LLC; and Sabine Williston Basin LLC.

Michael C. Hefter
Robert G. Burns
BRACEWELL LLP
1251 Avenue of the Americas, 49th Floor
New York, New York 10020-1104
Telephone:  (212) 508-6100
Facsimile:  (800) 404-3970

William ("Trey") A. Wood (*pro hac vice*)
Yvonne Y. Ho (*pro hac vice*)
BRACEWELL LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile:  (713) 221-1212

*Attorneys for Nordheim Eagle Ford
Gathering, LLC*

## TABLE OF CONTENTS

*Page*

INDEX OF AUTHORITIES ........................................................................................ ii

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 1

I.   The Covenants In The Gathering Agreements Are Real Covenants That Run With The Land ................................................................................................................. 1

    A.   The Touch-And-Concern Requirement Is Met Because The Covenants Impact Sabine's Property Rights ................................................................ 1

        1.   The Covenants Limit Sabine's Use Of The Interests ................................ 1

        2.   The Covenants Affect The Interests' Nature, Quality, And Value ........... 3

    B.   The Privity Requirement Is Met ......................................................... 5

        1.   Vertical Privity Exists ......................................................................... 5

        2.   Texas Law Does Not Require Horizontal Privity ................................ 6

        3.   Even If Horizontal Privity Is Required, It Is Satisfied In This Case .......... 7

            a.   Horizontal Privity Was Established Through The Transfer Of The Nordheim Parcel And Pipeline Easement .......................... 7

            b.   Horizontal Privity Was Established Through The Conveyance Of A Profit à Prendre ................................................................. 8

    C.   The Parties Expressly Intended For The Covenants To Run With The Land ................................................................................................... 9

II.   The Covenants Also Constitute Equitable Servitudes ...................................... 10

  CONCLUSION ...................................................................................................... 10

  CERTIFICATE OF SERVICE ................................................................................ 12

# INDEX OF AUTHORITIES

*Page(s)*

## Cases

*Am. Ref. Co. v. Tidal W. Oil Corp.*,
  264 S.W. 335 (Tex. Civ. App.—Amarillo 1924), *writ ref'd*, 114 Tex. 583
  (Tex. 1924) (per curiam)................................................................................3, 9, 10

*Barnes S.W. Plaza, LLC v. WF Retail Invs. LLC*,
  No. 02-11-00244-CV, 2012 WL 3758086 (Tex. App.—Fort Worth
  Aug. 30, 2012, no pet.) ................................................................................6

*El Dorado Land Co., L.P. v. City of McKinney*,
  395 S.W.3d 798 (Tex. 2013)................................................................................7

*In re El Paso Refinery, LP*,
  302 F.3d 343 (5th Cir. 2002) ................................................................................4

*In re Energytec, Inc.*,
  739 F.3d 215 (5th Cir. 2013) ................................................................................7

*Fallis v. River Mountain Ranch Prop. Owners Ass'n, Inc.*,
  No. 04-09-00256-CV, 2010 WL 2679997 (Tex. App.—San Antonio
  July 7, 2010, no pet.)................................................................................2

*Gulf Sulphur Co. v. Ryman*,
  221 S.W. 310 (Tex. Civ. App.—Galveston 1920, no writ) ................................8

*Inwood North Homeowners' Ass'n v. Harris*,
  736 S.W.2d 632 (Tex. 1987)................................................................................6, 9, 10

*Lyle v. Jane Guinn Revocable Trust*,
  365 S.W.3d 341 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)................6

*Marcus Cable Assocs., L.P. v. Krohn*,
  90 S.W.3d 697 (Tex. 2002)................................................................................7

*Miller v. Speed*,
  248 S.W.2d 250 (Tex. Civ. App.—Eastland 1952, no writ)................................3

*Montfort v. Trek Res., Inc.*,
  198 S.W.3d 344 (Tex. App.—Eastland 2006, no pet.) ................................3, 6

*Phillips Petroleum Co. v. Adams*,
  513 F.2d 355 (5th Cir. 1975) ................................................................................2, 3

*Rolling Lands Invs., L.C. v. Nw. Airport Mgmt., L.P.*,
  111 S.W.3d 187 (Tex. App.—Texarkana 2003, pet. denied) ................................2

*Page(s)*

*Severance v. Patterson*,
370 S.W.3d 705 (Tex. 2012)....................................................................7

*Simms v. S. Pipe Line Co.*,
195 S.W. 283 (Tex. Civ. App.—Galveston 1917, writ ref'd)...................3

*Stephens Cnty. v. Mid-Kansas Oil & Gas Co.*,
254 S.W. 290 (Tex. 1923)....................................................................2, 4

*U.S. Pipeline Corp. v. Kinder*,
609 S.W.2d 837 (Tex. Civ. App.—Fort Worth 1980, writ ref'd n.r.e.)....................................3

*Voice of the Cornerstone Church Corp. v. Pizza Prop. Partners*,
160 S.W.3d 657 (Tex. App.—Austin 2005, no pet.) ...........................4, 9

*Wasson Interests, Ltd. v. Adams*,
405 S.W.3d 971 (Tex. App.—Tyler 2013, no pet.) ...............................5

*Westland Oil Dev. Corp. v. Gulf Oil Corp*,
637 S.W.2d 903 (Tex. 1982)...............................................................6, 10

*Wimberly v. Lone Star Gas Co.*,
818 S.W.2d 868 (Tex. App.—Fort Worth 1991, writ denied)..............6, 7

**Treatises**

2-4 WILLIAMS & MEYERS, OIL AND GAS LAW § 403 (2015) ....................4

3 SUMMERS OIL & GAS § 29:1 (3d ed. 2012).........................................4

31A TEX. JUR. 3D EASEMENTS & LICENCES IN REAL PROPERTY § 5 ............8

RESTATEMENT (FIRST) OF PROPERTY § 534(a) (1936) .............................8

RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.4 (2000)..................7

RESTATEMENT (THIRD) OF PROPERTY: WILLS AND OTHER DONATIVE TRANSFERS
§ 25.2 & cmt. a.................................................................................7

**Other Authorities**

David A. Thomas, *How Far Does the Covenant Run? Covenants that Run with
the Land in Oil and Gas Transactions,* 54 ROCKY MTN. MIN. LAW INST. 19-1
§ 19.06[3][d] (2007)...........................................................................2

## INTRODUCTION

Sabine mischaracterizes Nordheim's appeal as a "policy argument" based on the disruptive impact of the bankruptcy court's decisions on the Texas midstream industry.  To the contrary, Nordheim's arguments are rooted in longstanding principles of Texas law on which the oil and gas industry has routinely relied when entering into similar covenants to safeguard long-term investments in developing pipeline infrastructure.  Sabine and Nordheim intended for the covenants in the Gas Gathering Agreement and Condensate Gathering Agreement (collectively, the "Gathering Agreements") to run with the Interests in those agreements, consistent with Texas's recognition that a dedication which burdens minerals yet-to-be produced satisfies the touch-and-concern and privity requirements.  The correct application of Texas law forecloses Sabine's attempt to extinguish the covenants.  This Court should reverse.

## ARGUMENT

**I.     The Covenants In The Gathering Agreements Are Real Covenants That Run With The Land**

**A.     The Touch-And-Concern Requirement Is Met Because The Covenants Impact Sabine's Property Rights**

Both tests for determining whether the covenants in the Gathering Agreements touch and concern the Interests are satisfied.  First, the covenants affect Sabine's rights in the gas and condensate by restricting how Sabine can use them upon extraction.  Second, the covenants affect the nature, quality, and value of the Interests.

**1.     The Covenants Limit Sabine's Use Of The Interests**

Sabine does not dispute that its Interests are burdened by the covenants in the Gathering Agreements.  Rather, it claims that this burden relates to personal property, not real property.

(Sabine Br. at 18-34). This contention is flatly contradicted by the language of the Gathering Agreements and fundamental Texas oil and gas law.[2] (*See* Consol. Br. at 9-14).

Sabine misplaces focus on whether the Gathering Agreements gave Nordheim an *ownership* right in the Interests. (*See* Sabine Br. at 32-34; *see also id.* at 15-16). The touch-and-concern test, however, requires only that a covenant affect the *use* of real property, without requiring a transfer of the property itself. *See, e.g.*, *Rolling Lands Invs., L.C. v. Nw. Airport Mgmt., L.P.*, 111 S.W.3d 187, 200 (Tex. App.—Texarkana 2003, pet. denied); *Fallis v. River Mountain Ranch Prop. Owners Ass'n, Inc.,* No. 04-09-00256-CV, 2010 WL 2679997 (Tex. App.—San Antonio July 7, 2010, no pet.). Here, by requiring that "all [gas and condensate] produced and saved from wells … located within the Dedicated Area" be delivered to Nordheim's facilities, (Nord. Dkt. 21, Gath. Agmts. § 1.1), the covenants restrict Sabine's property right to use and dispose of gas and condensate. *See Stephens Cnty. v. Mid-Kansas Oil & Gas Co.*, 254 S.W. 290, 292 (Tex. 1923) ("Ownership of … gas and oil in place [means] having the exclusive right to possess, use, and dispose of the gas and oil.").

The case law cited by Sabine actually undermines its contention that the covenants merely affect personal property interests. (*See* Sabine Br. at 21, 37 (citing *Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 363 (5th Cir. 1975)). The court in *Phillips Petroleum* distinguished obligations that burden minerals while "still in place"—a real property interest—from those that create rights to minerals *after* their extraction. 513 F.2d at 363 (certain obligations "are deemed by Texas courts to be interests in realty" because they "represent interests in the oil and gas still

---

[2] Sabine's position is also contradicted by one of the commentators cited in its brief. *See* Sabine Br. at 14 (citing David A. Thomas, *How Far Does the Covenant Run? Covenants that Run with the Land in Oil and Gas Transactions*, 54 ROCKY MTN. MIN. LAW INST. 19-1 § 19.06[3][d] (2007) ("Under some gas gathering and gas purchasing agreements, the producer enters into a commitment to dedicate existing and even later-acquired reserves to the gatherer or processor. By analogy to more typical royalty agreements, ... such obligations would seem to touch and concern the land.")).

in place on the property," like "an interest in future production").  Here, the covenants burden Sabine's use of "oil and gas still in place" that will be extracted by "future production."  *See Phillips Petroleum*, 513 F.2d at 363.  Gas and condensate "that has not been produced and is in place in the ground is realty."  *U.S. Pipeline Corp. v. Kinder*, 609 S.W.2d 837, 840 (Tex. Civ. App.—Fort Worth 1980, writ ref'd n.r.e.).[3]  Because minerals to be "produced and saved" are a real property interest, the covenants in the Gathering Agreement burden real property.

Sabine also incorrectly claims that the covenants merely result in the "temporary loss of possession of its extracted oil and gas condensate."  (Sabine Br. at 34).  Sabine fails to recognize that these "covenants … are real rather than personal covenants, because at the time the contract was made it had for its object gas which was then inherent in and a part of the land itself."  *See Am. Ref. Co. v. Tidal W. Oil Corp.*, 264 S.W. 335 (Tex. Civ. App.—Amarillo 1924), *writ ref'd*, 114 Tex. 583 (Tex. 1924) (per curiam).  Sabine's attempt to distinguish *American Refining* and *Simms v. S. Pipe Line Co.*, 195 S.W. 283 (Tex. Civ. App.—Galveston 1917, writ ref'd), as cases involving the *purchase* of minerals is unavailing.[4]  (Sabine Br. 13).  These covenants run with the land because they burden the use of minerals yet-to-be-produced.

## 2.    The Covenants Affect The Interests' Nature, Quality, And Value

Just as the covenants affect Sabine's rights in the Interests, they also affect the nature, quality, and value of those Interests.  Sabine limited its "right to possess, use, and dispose" of the

---

[3] Sabine misses the point of Nordheim's reference to *Miller v. Speed*, 248 S.W.2d 250, 252 (Tex. Civ. App.—Eastland 1952, no writ).  Nordheim does not rely on *Miller* for the notion that "the 'produced and saved' language in the Agreements gives [Nordheim] an ownership interest in Sabine's real property."  (Sabine Br. at 32).  Rather, *Miller* holds that "minerals produced, saved and made available for market," such as those *encumbered* by the covenants in the Gathering Agreements, represent an interest in real property.  248 S.W.2d at 252.

[4] Sabine tries to distinguish *American Refining* and *Montfort v. Trek Resources, Inc.*, 198 S.W.3d 344 (Tex. App.—Eastland 2006, no pet.), on the basis that these cases involved gas and water that was in place in the ground.  (Sabine Br. 34).  But the covenants in the Gathering Agreements also burden gas and condensate that was in the ground at the time of contracting.

minerals, *see Stephens Cnty.*, 254 S.W. at 292, when it covenanted to deliver to Nordheim all gas or condensate produced.  *Compare with In re El Paso Refinery, LP*, 302 F.3d 343, 356–57 (5th Cir. 2002) (covenant did not touch and concern land because it "[did] not compel nor preclude the promisor or any subsequent owner from doing anything on the land itself").  The covenants altered the nature of the Interests by restricting the disposition and enjoyment of the gas and condensate.  Indeed, these covenants are materially indistinguishable from obligations—like a covenant to "market the oil or gas produced"—"which so affect the nature of the legal interest of the lessor and the lessee, or 'touch and concern the land,' that they run with an assignment of the lease."  3 SUMMERS OIL & GAS § 29:1 (3d ed. 2012); *see also* 2-4 WILLIAMS & MEYERS, OIL AND GAS LAW § 403 (2015) ("The usual covenants ... in oil and gas leases, e.g., to drill a test well or to offset, obviously touch and concern the estates owned by lessor and lessee.").

The covenants also affect the value of the Interests independent of collateral circumstances by requiring the owner of the Interests to deliver the gas and condensate to Nordheim, pay a monthly gathering fee, and make deficiency payments if the owner fails to deliver an annual minimum volume.  (Nord. Dkt. 21, Gath. Agmts. §§ 1.1, 1.9, 5.1); (Consol. Br. at 14-15).  Sabine contends this impact on value is tied to "collateral circumstances" because it depends "upon commodity prices and the market rate for the agreed-to services."  (Sabine Br. at 29).  But the value of property interests *always* depends on market conditions, so the mere fact that market conditions affect the *extent* of the covenants' impact on value cannot be determinative of whether the covenants touch and concern the land.  For example, a covenant not to use property for residential purposes has a varying impact on the property's value as the neighborhood changes, but nonetheless runs with the land.  *See, e.g.*, *Voice of the Cornerstone Church Corp. v. Pizza Prop. Partners*, 160 S.W.3d 657, 666 (Tex. App.—Austin 2005, no pet.) (covenant restricting property to commercial and industrial uses "burdened the property itself"

and touched and concerned the land).  The relevant question is whether, independent of collateral circumstances, the covenants affect the property's value—as these covenants plainly do.

Sabine's assertion that the covenants only affect Sabine personally because they "impact[ ] Sabine's potential profit in processing and selling those minerals once extracted," (Sabine Br. at 29), is without merit.  The obligations to deliver the minerals to Nordheim, pay gathering fees, and make deficiency payments affect how much a buyer would pay for the Interests.  Therefore, the covenants impact the value of the Interests themselves.

Sabine further contends the covenants do not burden the Interests because they are not "triggered by … an action affecting the land itself," but by Nordheim's "receipt of the gas and condensate" after production.  (Sabine Br. at 30).  This is an incorrect reading of the Gathering Agreements, which prohibit Sabine from "extract[ing] hydrocarbons and opt[ing] not to transport or deliver those hydrocarbons to [Nordheim]."  (*See id.*).  Because Sabine committed itself to deliver to Nordheim all gas and condensate produced from the Dedicated Area and to make a deficiency payment if it failed to deliver a minimum annual volume, (Nord. Dkt. 21, Gath. Agmts. § 1.1), the covenants were "triggered" when the Gathering Agreements were executed.

### B.    The Privity Requirement Is Met

#### 1.    Vertical Privity Exists

Sabine continues to misapprehend vertical privity, arguing that this requirement is not met because Sabine South Texas LLC, a non-party to the Gathering Agreements, has not conveyed ownership of the Interests to Sabine.  (Sabine Br. at 247).  Yet the very authority on which Sabine relies provides that a restrictive covenant is enforceable "by the contracting parties *and those in direct privity of estate with the contracting parties*."  *Wasson Interests, Ltd. v. Adams*, 405 S.W.3d 971, 973 (Tex. App.—Tyler 2013, no pet.) (emphasis added).  Here, Nordheim is a contracting party, and its counterparty, Sabine, is the successor-in-interest to—and

thus has direct privity of estate with—Sabine Oil and Gas LLC.  (*See* Main Dkt. 371 at 3 n.3).
Accordingly, vertical privity exists.  (Consol. Br. at 16 & n.16).

### 2.    Texas Law Does Not Require Horizontal Privity

Sabine's contention that horizontal privity is required for a covenant to run with the land, (Sabine Br. at 9-14), cannot withstand the Texas Supreme Court's holdings in *Westland Oil Development Corp. v. Gulf Oil Corp*, 637 S.W.2d 903, 904-07 (Tex. 1982), and *Inwood North Homeowners' Association v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987), that the privity requirement is met by establishing vertical, not horizontal, privity.  Although Sabine relies on some intermediate appellate court opinions that have referenced a horizontal privity requirement, the Texas Supreme Court's most recent pronouncements—coupled with its abandonment of other, similarly antiquated property-law requirements—confirm that horizontal privity is not required.  (*See* Consol. Br. at 16-19).

In asserting that horizontal privity "was plainly satisfied in [*Westland* and *Inwood*], and thus not at issue in either," (Sabine Br. at 10-12), Sabine fails to recognize that the Texas Supreme Court examined whether the *general* "requirement of privity" was satisfied.  *Inwood*, 736 S.W.2d at 635; *Westland*, 637 S.W.2d at 911.  The Court held that this "requirement of privity" was met because the litigants had a successive relationship to the covenanting parties— which dovetails with a *vertical*, not horizontal, privity analysis.  *Westland* and *Inwood*—along with numerous other decisions—make clear that Texas law no longer requires horizontal privity for a covenant to run with the land.[5]  *See, e.g.*, *Lyle v. Jane Guinn Revocable Trust*, 365 S.W.3d

---

[5] *See also*, *e.g.*, *Barnes S.W. Plaza, LLC v. WF Retail Invs. LLC*, No. 02-11-00244-CV, 2012 WL 3758086, at *4 (Tex. App.—Fort Worth Aug. 30, 2012, no pet.) (holding that covenant ran with land without addressing horizontal privity); *Montfort*, 198 S.W.3d at 355 (same). Sabine contends that horizontal privity existed in *Wimberly v. Lone Star Gas Co.*, 818 S.W.2d 868 (Tex. App.—Fort Worth 1991, writ denied), because the case "involved a sale of water rights …, which sale constituted a conveyance of a real property interest under Texas law." (Sabine Br. at 12).  But nowhere does *Wimberly* suggest that the contract to purchase water

341, 353 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (privity existed because of parties' "successive relationship" to prior owners).

The Texas Supreme Court's understanding of the law aligns with that of the Restatement (Third) of Property, which expressly rejects the doctrine of horizontal privity.  RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.4 (2000).  Indeed, the Texas Supreme Court has relied on the Restatement both when discussing servitudes[6] and when dispensing with other outmoded property-law constructs.[7]  Moreover, the Court's willingness to abandon antiquated property-law requirements reinforces the likelihood that horizontal privity—a "much-criticized doctrine," *In re Energytec, Inc.*, 739 F.3d 215, 222 (5th Cir. 2013), that is "no longer needed for" its sole purpose of assuring that covenants will be recorded, RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.4 cmt. a.—is unnecessary for a covenant to run with the land.

### 3.   Even If Horizontal Privity Is Required, It Is Satisfied In This Case

#### a.   Horizontal Privity Was Established Through The Transfer Of The Nordheim Parcel And Pipeline Easement

Assuming that horizontal privity is necessary, Sabine incorrectly claims that it requires a conveyance of an interest in the land burdened by the covenant.  (Sabine Br. at 22).  A party need only burden land with a covenant as *part of a transaction* that involved a transfer of other land benefitted by the covenant.  *See* RESTATEMENT (FIRST) OF PROPERTY § 534(a) (1936); (Consol.

---

created horizontal privity, much less that horizontal privity was relevant to the court's holding that "[w]e see nothing in the contract that is inconsistent with the [S]upreme [C]ourt's definition of a contract running with the land."  818 S.W.2d at 870-71.

[6] *See, e.g.*, *Severance v. Patterson*, 370 S.W.3d 705, 737 (Tex. 2012) (citing RESTATEMENT (THIRD) OF PROPERTY § 4.1, interpretation of servitudes); *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 702 (Tex. 2002) (citing RESTATEMENT (THIRD) OF PROPERTY §§ 1.2 cmt. d, 4.2 cmt. a, 4.10 & cmt. a, scope of an express easement).

[7] *See, e.g.*, *El Dorado Land Co., L.P. v. City of McKinney*, 395 S.W.3d 798, 803 (Tex. 2013) (citing RESTATEMENT (THIRD) OF PROPERTY: WILLS AND OTHER DONATIVE TRANSFERS § 25.2 & cmt. a (2011)) (refusing to distinguish between certain reversionary interests, noting that "[t]he latest Restatement dispenses with the historical parsing of future interests").

Br. at 20-21).  This is what happened here: Sabine burdened the Interests through covenants in the Gathering Agreements, which transferred interests in land benefitted by the covenants—*i.e.*, the Nordheim Parcel and Pipeline Easement.

Sabine disregards the structure of the Gathering Agreements in contending that "[t]here is no benefit to any particular tract of land."  (Sabine Br. at 39).  The Amendment required Sabine to convey to Nordheim both a "tract of land" for Nordheim's "construction and operation of the Gathering System" and "related pipeline and electric line rights-of-way and easements."  (Nord. Dkt. 21, Amendmt. at 1).  The Gathering Agreements therefore benefited the Nordheim Parcel and Pipeline Easement by providing for their use in gathering and treating the gas and condensate, which satisfies any horizontal-privity requirement.

> **b.    Horizontal Privity Was Established Through The Conveyance Of A Profit à Prendre**

Sabine contends that Nordheim did not receive a profit à prendre because "the Agreements do not convey the right to sever and take title to gas and condensate from Sabine's estate."[8]  (Sabine Br. at 25).  Although a profit à prendre may *include* the right to take title to the soil or produce of the land, it more broadly encompasses the grant of any "right to participate in the profits of the soil."  31A Tex. Jur. 3d Easements & Licenses in Real Property § 5 (citing *Gulf Sulphur Co. v. Ryman*, 221 S.W. 310, 313 (Tex. Civ. App.—Galveston 1920, no writ)).  Here, Sabine's covenanting to pay gathering fees gave Nordheim the right to participate in profits of the gas and condensate.  This right, coupled with Nordheim's right to take and transport the gas and condensate, establishes a profit à prendre.  (Consol. Br. at 21-23).

---

[8] This is *not* a new issue.  In fact, Nordheim cited some of the same cases on profit à prendre in the bankruptcy court as it has in this appeal.  (*Compare* Nord. Dkt. 8 at 21-23, *with* Consol. Br. at 21-23).

**C.      The Parties Expressly Intended For The Covenants To Run With The Land**

Sabine's attempt to escape the covenants disregards the plain language of the Gathering Agreements.  "In construing a restrictive covenant, as [with] any written instrument, [a court's] first duty is to seek the intention of the parties to give effect to their purposes."  *Voice of Cornerstone Church Corp. v. Pizza Prop. Partners*, 160 S.W.3d 657, 667 (Tex. App.—Austin 2005, no pet.).  Sabine's assertion that the parties' intent is not dispositive, (Sabine Br. at 8), fails to recognize that intent is a primary consideration:

> While there is authority to the effect that the first criterion by which to determine whether a given covenant runs with the land or not is the nature and purpose of the covenant, and where this is not decisive, the intent of the parties as expressed in that deed will determine the question[,] ... under the modern rules of interpretation the order of inquiry above stated is reversed and consideration is given:  First, as to whether the parties meant to charge the land; and, secondly, whether the burden is one that can be imposed consistently with policy and principle.

*Am. Ref.*, 264 S.W. at 340.

Here, the Gathering Agreements conclusively establish that the parties "meant to charge the land," *id.*, by expressly stating that "this Agreement *shall (i) be a covenant running with the Interests* now owned or hereafter acquired by [Sabine] and/or its Affiliates within the Dedicated Area and (ii) *be binding on [Sabine] and enforceable by [Nordheim] ...* against [Sabine], its Affiliates and their respective successors and assigns," and "shall remain binding on the applicable transferee(s) and enforceable by the non-transferring Party or its permitted successors and assigns."  (Nord. Dkt. 21, Gath. Agmts. § 1.6 (emphasis added); *see also* Nord. Dkt. 5-4 & 5-5 ¶ 4 (similar language in Memoranda of the Gathering Agreements filed in property records)).

Sabine cannot circumvent this plain language by conflating the intent requirement with the separate and distinct horizontal privity requirement.  (Sabine Br. at 35).  The relevant intent is the parties' intent that a covenant run with the land, not an intent to transfer a real property interest.  *See Inwood*, 736 S.W.2d at 635 (declaration that property was "impressed with certain

-9-

covenants and restrictions" that "would run with the land" and be binding upon subsequent owners established parties' intent "that the covenant run with the land").

Moreover, as shown above, giving effect to the parties' intent that the covenants in the Gathering Agreements run for the land comports with principles of Texas law. *See Am. Ref.*, 264 S.W. at 335. The covenants touch and concern the Interests, as they affect the parties' rights in, and the nature, quality, and value of, gas and condensate still in place in the ground. The privity requirement is met through the existence of vertical privity, as the Texas Supreme Court indicated in *Westland* and *Inwood*. And even if horizontal privity were required, it exists here through the Gathering Agreement's conveyance of the Nordheim Parcel and Pipeline Easement and granting to Nordheim a profit à prendre. Texas law confirms that the bankruptcy court erred in refusing to honor the parties' express intent to make these covenants run with the land.

## II.      The Covenants Also Constitute Equitable Servitudes

Sabine contends the covenants do not limit the use of the purportedly burdened land, relate only to personal property, and provide no benefit to Nordheim's land, and, therefore, cannot be equitable servitudes. (Sabine Br. at 37-39). As discussed above, the covenants *do* limit the use of real property (Part I.A.1, *supra*) and benefit the Nordheim Parcel and Pipeline Easement (Part I.B.3.a, *supra*). Accordingly, the covenants constitute equitable servitudes.

## CONCLUSION

For these reasons, Appellants respectfully request that this Court reverse both (1) the bankruptcy court's May 11, 2016 Order granting Debtors' motion for summary judgment in the adversary proceedings and denying Appellants' motions for judgment on the pleadings, and (2) the May 11, 2016 Order authorizing Debtors' rejection of the underlying agreements. Appellants further request any additional relief to which they are justly entitled.

DATED:  September 20, 2016

Respectfully submitted,

BRACEWELL LLP

By: */s/ Michael C. Hefter*
     Michael C. Hefter
     Michael.Hefter@bracewelllaw.com
     Robert G. Burns
     Robert.Burns@bracewelllaw.com
     1251 Avenue of Americas, 49th Floor
     New York, New York 10020-1104
     Telephone: (212) 508-6100
     Facsimile:  (800) 404-3970

     William A. ("Trey") Wood III (*pro hac vice*)
     Trey.Wood@bracewelllaw.com
     Yvonne Y. Ho (*pro hac vice*)
     Yvonne.Ho @bracewelllaw.com
     711 Louisiana Street, Suite 2300
     Houston, Texas 77002
     Telephone: (713) 223-2300
     Facsimile:  (713) 221-1212

     *Attorneys for Nordheim Eagle Ford Gathering, LLC*

## CERTIFICATE OF SERVICE

I, Michael C. Hefter, hereby certify that on September 20, 2016, I caused the foregoing papers to be electronically filed with the Clerk of Court using the ECF system which will send electronic notices of same to all counsel of record.

DATED:  September 20, 2016

**BRACEWELL LLP**

By: _/s/ Michael C. Hefter_
     Michael C. Hefter

#5308058